UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
RICKIE PATTON; and                 )
CATHLEEN MARQUARDT,                )
                                   )
        Plaintiffs,                )    C.A. No. 17-259 WES
                                   )
    v.                             )
                                   )
BARRY JOHNSON and STEVEN JOHNSON,  )
individually and as LAW OFFICES    )
OF STEVEN M. JOHNSON, P.C.         )
d/b/a THE JOHNSON LAW FIRM,        )
                                   )
        Defendants.                )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court is Defendant Barry Johnson's Motion to Stay and Compel Arbitration (ECF No. 11). Magistrate Judge Patricia A. Sullivan filed a Report and Recommendation ("R&R") (ECF No. 20), recommending that the Motion be denied. Defendant filed a timely Objection to the R&R (ECF No. 30).[1] The Court accepts the R&R and denies Defendant's Motion.

As Defendant acknowledges, "[T]he First Circuit in Powershare held that a motion to stay pending an arbitration was non-dispositive." (Obj. 6 (citing Powershare, Inc. v. Syntel, Inc., 597 F.3d 10, 14 (1st Cir. 2010)).) On review of a magistrate

---

[1] After filing his initial objection (ECF No. 29), Defendant filed a corrected version (ECF No. 30). The Court addresses the latter for purposes of this Memorandum and Order.

judge's decision on a nondispositive motion, the Court "set[s] aside the order" only "if it 'is clearly erroneous or is contrary to law.'"  Powershare, 597 F.3d at 14 (quoting Fed. R. Civ. P. 72(a)).  "This means that [I] must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, [I] 'form a strong, unyielding belief that a mistake has been made.'"  Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 4 (1st Cir. 1999) (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)).

Although Defendant's objections are quite specific, they do not convey the necessary "strong, unyielding belief" that Magistrate Judge Sullivan clearly erred.  For that reason, the Court adopts the well-supported R&R in full.

Accordingly, this Court ACCEPTS the R&R (ECF No. 20) and adopts its reasoning and recommendations.  Defendant's Motion to Stay and Compel Arbitration (ECF No. 11) is DENIED.
IT IS SO ORDERED.

_____
William E. Smith
Chief Judge
Date:  August 2, 2018

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| RICKIE PATTON and CATHLEEN MARQUARDT, | : |
| Plaintiffs, | : |
| | : |
| v. | : C.A. No. 17-259WES |
| | : |
| BARRY JOHNSON, STEVEN JOHNSON, LAW OFFICES OF STEVEN M. JOHNSON, P.C., d/b/a JOHNSON LAW FIRM, | : |
| Defendants. | : |

**REPORT AND RECOMMENDATION**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Pending before the Court is the motion of defendant, attorney Barry Johnson, to stay this legal malpractice case and to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* ECF No. 11. Also named as defendants are the law firm for which Barry Johnson worked, Law Offices of Steven M. Johnson, P.C., d/b/a the Johnson Law Firm, together with its principal, Steven M. Johnson (collectively, "JLF"). Only Barry Johnson, who apparently is not related to attorney Steven M. Johnson, presses the motion to compel arbitration.[1]

In their complaint, plaintiffs Rickie Patton and his wife, Cathleen Marquardt, have sued JLF and Barry Johnson, a Texas attorney who worked for JLF, for legal malpractice (among other torts), which Patton and Marquardt claim was committed in the course of defendants' representation of them[2] in litigating and settling Patton's claim in In re Kugel Mesh Hernia Patch

---

[1] To avoid confusion between the movant and JLF, the law firm that was his employer, I refer to the movant as "Barry Johnson."

[2] Beyond the scope of this report and recommendation is whether Marquardt was ever a client of JLF or Barry Johnson. Because I find that JLF and Barry Johnson are bound by the final and binding determination of a JAMS Arbitrator that Patton did not agree to arbitration, there is no need to consider whether she is bound by the arbitration clauses in the ARA. See Zinante v. Drive Elec., LLC, 582 F. App'x 368, 369-71 (5th Cir. 2014) (performing

Products Liability Litigation, MDL Docket 07- 1842-ML (D.R.I.). Barry Johnson seeks to enforce a set of arbitration clauses contained in the Attorney Representation Agreement ("ARA") (ECF No. 1-1 at 18) executed in April 2007 by Patton (but not his wife) and JLF. ECF No. 1-1 at 18 ¶¶ 16-18. Barry Johnson did not sign the 2007 ARA; his contractual relationship is with JLF and did not begin until February 20, 2013, when he signed an employment agreement.[3] Nevertheless, Barry Johnson seeks to enforce (against Patton and Marquardt) ¶ 17 of the ARA, which states that any dispute regarding the "interpretation, performance, or breach of this Fee Agreement, including any claim of legal malpractice . . . shall be resolved by final and binding arbitration conducted in Fort Worth, Texas and administered by Judicial Arbitration and Mediation Service (JAMS)." ECF No. 1-1 at 18 ¶ 17. JLF has not joined, nor does it oppose, the motion.

For the reasons that follow, I recommend that the motion to compel arbitration be denied.

**I.     BACKGROUND**

In April 2007, Patton and JLF signed the ARA whereby Patton engaged JLF to represent him on a contingent fee basis in connection with his Kugel Mesh claim. ECF No. 1-1 at 18 ¶¶ 1-4. The ARA provides that it is to be construed pursuant to the law of Texas. Id. ¶ 10. Its severability clause makes clear that the unenforceability of any provision does not affect the other provisions. Id. The ARA reflects Patton's agreement that JLF might employ associate

---

analysis whether wife who did not sign is bound by arbitration agreement formed by husband). In any event, at the hearing, Barry Johnson's counsel conceded that, as a non-party to the ARA, Marquardt is not bound by its arbitration clauses.

[3] Barry Johnson's brief states that he had an "employment agreement" with JLF, but the citation directs the Court to an agreement between JLF and a different attorney (John Deaton). ECF No. 11-1 at 3. However, in a recent opinion issued by the United States District Court for the Northern District of Texas, the court included the finding that, in February 2013, Barry Johnson signed an "employment contract . . ., whereby JLF employed Barry to work as an associate counsel to assist with hernia mesh litigation." Johnson v. Patton, 3:17-cv-01924-M, slip op. at 2 (N.D. Tex. Feb. 22, 2018) (docketed in this case at ECF No. 17-1).

counsel at its expense and in its discretion to appear or undertake to represent Patton. Id. ¶ 11. While plaintiffs and JLF disagree on the precise sequence of events, it appears that Patton (but not Marquardt) signed the ARA either immediately prior to or during their only meeting with attorney Steven M. Johnson, who signed the ARA on behalf of JLF. See ECF Nos. 15-2 ¶ 4, 15-3 ¶¶ 3-4, 16-2 ¶¶ 4-5. The ARA is a form prepared by JLF, with terms set out in sixteen numbered clauses (exclusive of the arbitration clauses) and lines at the foot of the document for dates and signatures of "CLIENT" and "ON BEHALF OF FIRM." These lines were signed and dated by Patton and by JLF indicating the formation of the contract to engage JLF. ECF No. 1-1 at 18. The parties do not dispute that these sixteen clauses of the ARA constitute a binding engagement agreement.

The ARA's three arbitration clauses are paragraphs 16, 17 and 18. ECF No. 1-1 at 18 ¶¶ 16-18. They address arbitration exclusively, including venue selection (Fort Worth, Texas). None of the other provisions of the ARA makes any reference to arbitration or to forum selection for litigation or arbitration of disputes. Collectively, the three arbitration clauses provide:

(1) The client has been advised "of the advantages and disadvantages of the use of arbitration" and has had an opportunity to seek advice from independent counsel;

(2) Based on this advice, the parties agree that "any dispute arising from the interpretation, performance, or breach of this Fee Agreement, including any claim of legal malpractice, . . . shall be resolved by final and binding arbitration conducted in Fort Worth, Texas and administered by Judicial Arbitration and Mediation Service (JAMS)"; and

(3) "[J]udgment upon any award rendered by the arbitrator in such proceedings may be entered by any state or federal court with jurisdiction over the matter."

Id. ¶¶ 16-18.

These three clauses are configured differently from the other provisions in the ARA form in that each ends with the following: "***(CLIENT INITIAL HERE _____X**." Id. (bold in original). However, none of the three is signed or initialed in the space following the clause. Both Patton and Marquardt have averred that, during their brief meeting with attorney Steven M. Johnson, he did not mention the arbitration clauses, did not advise them regarding arbitration and did not ask or suggest that Patton sign or initial any of the arbitration clauses. ECF Nos. 15-2 ¶ 5, 15-3 ¶ 4. As a result, only the foot of the document reflects Patton's signature. ECF No. 1-1 at 18. Patton has averred that he never believed or understood that he agreed to arbitration or that he was waiving his right to a jury trial. ECF No. 15-2 ¶ 6; see ECF No. 15-3 ¶ 4 (Marquardt also avers that Steven M. Johnson did not review the arbitration language or jury trial waiver during the meeting at which the ARA was signed). Steven M. Johnson's affidavit states that he met with Patton and Marquardt at the commencement of the engagement, soon after Patton returned the ARA, signed at the foot but not on the lines following the arbitration clauses; by silence, his affidavit confirms that he did not advise them of the advantages and disadvantages of arbitration and he did not ask them to initial the arbitration clauses. ECF No. 16-2 ¶¶ 3-6.

After Patton's Kugel Mesh case was filed, it was transferred by the Multidistrict Panel to the District of Rhode Island. In August 2012, a Rhode Island attorney, John Deaton, executed an agreement with JLF to perform legal services in connection with plaintiff Patton's Kugel Mesh case. Soon after, in November 2012, this Court granted a motion to strike an expert report pertinent to the Patton case, which adversely impacted the settlement; the subsequent management of the case was fraught with conflict. Plaintiff Patton appears to blame JLF and

Barry Johnson who became involved in 2013, while JLF blames Deaton; this alleged legal malpractice is the basis for the claim in the instant case. ECF No. 1-1 at 11.

After malpractice litigation was threatened, in April 2016, Barry Johnson sued Patton and JLF in Texas state court to compel arbitration based on the language in ¶ 17 of the ARA. ECF No. 1-1 ¶ 17. JLF brought Deaton into the case. Both Patton (a resident of Louisiana) and Deaton challenged the Texas court's jurisdiction over them. This argument was rejected by the Texas County Court and, as to Deaton only,[4] by the Texas Court of Appeals. Deaton v. Johnson, No. 05-16-01221-CV, 2017 WL 2991939 (Ct. App. Tex. July 14, 2017). Barry Johnson argues that this Texas state court proceeding resulted in the holding that the forum selection clause in ¶ 17 of the ARA was valid and enforceable.[5] ECF No. 16 at 8.

Based on that "holding," in the summer of 2016, JLF initiated a JAMS arbitration proceeding against Patton in Texas, in reliance on the arbitration clauses in the ARA ("2016 arbitration"). ECF No. 17-1 at 3. JAMS Arbitrator Hugh Hackney ("2016 Arbitrator") was appointed. Patton (and Marquardt) and JLF all actively participated in the arbitration by submitting affidavits. ECF No. 1-1 ¶ 38. The issue presented to the Arbitrator was "whether or not Respondent Patton agreed to the arbitration clause of The Agreement." ECF No. 1-1 at 31-32. In his decision, the Arbitrator focused on the language and format of the ARA, particularly on the recitation in the arbitration clauses that "Attorneys have advised Client of the advantages and disadvantages of arbitration" and that "Attorneys . . . have specifically given Client the opportunity to seek the advice of independent counsel." Id. The Arbitrator also focused on the

---

[4] Sometime after the Texas County Court ruled against him, Patton withdrew his appeal and submitted to personal jurisdiction in Texas. ECF No. 11-4.

[5] It is difficult to discern a holding of this scope in the Texas state court materials filed by the parties. The Texas County Court decision contains no explanation for its determination, ECF No. 1-1 at 5-6, while the Texas Court of Appeals considered only the arguments of Deaton, who was not challenging the enforceability of the arbitration clauses. See Deaton v. Johnson, No. 05-16-01221-CV, 2017 WL 2991939 (Ct. App. Tex. July 14, 2017).

lines following the three ARA arbitration clauses, each of which he found was meant "to be initialed to demonstrate Respondent's agreement to the paragraph's terms [and] is blank and devoid of any indication of affirmation." Id. at 32. He further found that JLF had prepared the ARA, that it was executed in the presence of JLF, that Patton signed at the foot of the ARA but did not sign or initial the lines to indicate agreement to the three arbitration clauses and that Patton was not represented by independent counsel at the time of execution. Id. After summarizing that "the law requires that the parties' agreement to arbitrate must be clear, in writing and the agreement must be signed by each party," the Arbitrator held:

> In this case, Respondent [Patton] failed to agree to arbitrate any dispute arising out of The Agreement he signed with Claimants, although he did agree to be represented by Claimants. There is no contractual agreement to arbitrate any disputes between the parties.

Id. The Arbitrator's decision issued on November 15, 2016. Six months later, freed of the arbitration clauses and the Texas venue selection, Patton filed the instant case, suing Barry Johnson and JLF in Rhode Island for legal malpractice (among other claims), all in connection with the outcome of Patton's Kugel Mesh case.

Even though Barry Johnson was an employee of JLF and had initiated the lawsuit in the Texas County Court that resulted in Patton being forced into the 2016 arbitration in Texas, Barry Johnson was not joined as a party in the 2016 arbitration. Therefore, he argues he is not bound by the adverse decision of the Arbitrator. He has persisted in his effort to force Patton into arbitration. In June 2017, he filed a second JAMS arbitration against Patton in Texas. In July 2017, he filed a new lawsuit in federal court in the Northern District of Texas, suing Patton and seeking to compel arbitration. And in February 2018, he filed the instant motion to compel arbitration in this case.

6

Barely a week after the instant motion was filed, the federal court in the Northern District of Texas ruled, rejecting all of Barry Johnson's arguments in support of his motion to compel Patton into arbitration in Texas and dismissing the case without prejudice. Johnson v. Patton, 3:17-cv-01924-M, slip op. at 14 (N.D. Tex. Feb. 22, 2018) (docketed in this case at ECF No. 17-1). The Texas federal court appears to have assumed that Patton had not entered into a binding arbitration agreement with JLF when he signed the ARA, in light of the final and binding determination by the JAMS Arbitrator in November 2016 that no agreement to arbitrate was formed. ECF No. 17-1 at 3. Instead, District Judge Lynn's opinion focuses on Barry Johnson's 2013 employment agreement with JFL (to which Patton was not a party), holding that Patton was not bound by an arbitration clause in that document, whether under an agency theory, a direct benefits estoppel theory, or a third party beneficiary theory. Id. at 6-14.

Barry Johnson now reverts to reliance on the ARA, arguing that, as an employee of JLF, he is entitled to enforce the firm's ARA-based right to arbitrate and that this Court should vacate the decision of the 2016 Arbitrator because it is tainted by an error of law based on the Arbitrator's statement that "the law requires . . . that the agreement must be signed by each party." ECF No. 1-1 at 32.

## II. APPLICABLE LAW

Whether a matter is arbitrable pursuant to the Federal Arbitration Act ("FAA") is a matter of contract interpretation, and contract interpretation is a matter of law. Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 6 (1st Cir. 2014); Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008). If the arbitration clause clearly provides that the question of arbitrability itself – that is, whether the parties have agreed to arbitrate – is to be decided by the arbitrator, that threshold issue must also be the subject of arbitration. Howsam v. Dean Witter

7

Reynolds, Inc., 537 U.S. 79, 83-84 (2002). To compel arbitration, the defendant "must demonstrate 'that a valid agreement to arbitrate exists, that [he is] entitled to invoke the arbitration clause, that the other party is bound by that clause, and that the claim asserted comes within the clause's scope.'" Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino, 640 F.3d 471, 474 (1st Cir. 2011). Under § 2 of the FAA, a written provision in a contract "to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "[T]he FAA was designed to promote arbitration"; courts are advised to interpret the FAA guided by the principle that "Section 2 embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." Soto-Fonalledas, 640 F.3d at 474 (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 346 (2011)); see Epic Sys. Corp. v. Lewis, No. 16-285, slip op. at 5-6 (U.S. May 21, 2018) (courts must rigorously enforce arbitration agreements according to their terms).

To persuade a court to vacate the decision of an arbitrator, a party must clear "the high hurdle" set out in § 10(a) of the FAA. Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671-72 (2010). Under § 10(a), a court may vacate an arbitrator's decision if the award was procured by fraud or corruption, if the arbitrator engaged in "misbehavior," or if the arbitrator exceeded his powers – in short, "only in very unusual circumstances." First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995). It is not enough to show that the panel committed an error – even a serious error. Stolt-Nielsen, 559 U.S. at 671. "Because the parties 'bargained for the arbitrator's construction of their agreement,' an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its (de)merits." Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 (2013). Only if "the arbitrator act[s] outside the scope of

his contractually delegated authority" – issuing an award that "simply reflect[s] [his] own notions of [economic] justice" rather than "draw[ing] its essence from the contract" – may a court overturn his determination. Eastern Associated Coal v. Mine Workers, 531 U.S. 57, 62 (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, 484 U.S. 29, 38 (1987)). The potential for mistake is the price of agreeing to arbitration; "[t]he arbitrator's construction holds, however good, bad, or ugly." Oxford Health Plans, 569 U.S. at 573.

One potential exception to the principle that courts may not vacate an arbitral award based on the arbitrator's error of law was recognized in the First Circuit prior to the Supreme Court's decision in Hall Street Assoc., L.L.C. v. Mattel, Inc., 552 U.S. 576 (2008). Specifically, in McCarthy v. Citigroup Global Markets Inc., the First Circuit recognized that "manifest disregard of the law" may be a non-statutory basis for a court to vacate an arbitration award. 463 F.3d 87, 91 n.6 (1st Cir. 2006). Since Hall Street, however, the First Circuit has not "squarely determined whether [its] manifest disregard case law" is still viable. Sanwan Trust v. Lindsay, Inc., 251 F. Supp. 3d 353, 357 (D. Mass. 2017) (alteration in original). In *dicta*, the First Circuit has "acknowledge[d] the Supreme Court's recent holding in [Hall Street] that manifest disregard of the law is not a valid ground for vacating or modifying an arbitral award in cases brought under the [FAA]." Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 124 n.3 (1st Cir. 2008). Further, to the extent the manifest disregard standard survives at all, the First Circuit has acknowledged that "Hall Street compels the conclusion that it does so only as a judicial gloss on § 10." Ortiz–Espinosa v. BBVA Sec., of P.R., Inc., 852 F.3d 36, 46 (1st Cir. 2017).

At bottom, it is clear that "[t]o obtain vacatur of an arbitration award, '[i]t is not enough for [a party] to show that the panel committed an error – or even a serious error.'" Raymond James Fin. Serv., Inc. v. Fenyk, 780 F.3d 59, 63 (1st Cir. 2015) (alteration in original) (quoting

9

Stolt–Nielsen, 559 U.S. at 671). Rather, "[t]he challenging party has the burden to establish 'substantially more than an erroneous conclusion of law or fact.'" Rogers v. Ausdal Fin. Partners, Inc., 168 F. Supp. 3d 378, 385 (D. Mass. 2016) (quoting Local Union No. 251 v. Narragansett Imp. Co., 503 F.2d 309, 312 (1st Cir. 1974)). Thus, it is well settled that "[i]t is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 599 (1960).[6]

## III.  ANALYSIS

Barry Johnson contends that the 2016 Arbitrator's decision should be vacated because it states that "the law requires . . . that the agreement must be signed by each party," which he argues is an error of law. ECF No. 1-1 at 32. Barry Johnson does not assert that the Arbitrator exceeded his authority in interpreting the ARA to determine whether Patton agreed to the three arbitration clauses. Nor does he allege that the Arbitrator's decision was tainted by fraud, corruption or misbehavior. Rebutting an argument that Patton did not make,[7] he points to the Texas holding in Royston, Rayzor, Vickery, & Williams, LLP v. Lopez, 467 S.W.3d 494, 502 (Tex. 2015), that it is not unconscionable for a legal malpractice claim to be the subject of an enforceable binding arbitration agreement.

---

[6] Relatedly under Texas law, errors of facts and law are not grounds for vacating an arbitration award unless the parties' agreement specifically provides that the arbitrator lacks the authority to render a decision with reversible error. Nafta Traders, Inc. v. Quinn, 339 S.W.3d 84, 102 (Tex. 2011); see Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc., 294 S.W.3d 818, 830 (Tex. App. 2009) ("A complaint that the arbitrator decided the issue incorrectly or made mistakes of law, however, is not a complaint that the arbitrator exceeded her powers.").

[7] Patton does not argue that arbitration of a legal malpractice claim is unconscionable. Rather, he contends – and the 2016 Arbitrator concurred – that he did not agree to arbitrate.

10

Barry Johnson's criticism of the Arbitrator's recitation of what "[t]he law requires" is well founded to the extent that Johnson is focused on the FAA, which requires only that an agreement to arbitrate must be in writing.  9 U.S.C. § 2.  However, the Arbitrator was right with respect to the Texas Arbitration Act ("TAA"), which requires a signature on an arbitration agreement if it is embedded in an agreement made by an individual for the acquisition of services furnished for consideration of less than $50,000.[8]  Tex. Civ. Prac. & Rem. Code §171.002 (a)(2).  Nevertheless, the FAA trumps the TAA in that the Supreme Court has held that the FAA preempts any state rule that discriminates on its face against arbitration by failing to put arbitration agreements on equal footing with other agreements.  Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 137 S. Ct. 1421, 1425 (2017).  More importantly, however, both the FAA and the TAA require a determination of whether or not the parties reached an agreement – and the lack of a signature where one appears to have been required may appropriately be considered as evidence of the absence of a deal.  See, e.g., Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 556 (1st Cir. 2005) (where other alterations to employment relationship were memorialized in conventional writings that required signature, unsigned email insufficient to form agreement to arbitrate); A.T. Cross Co. v. Royal Selangor(s) PTE, Ltd., 217 F. Supp. 2d 229, 237 (D.R.I. 2002) (lack of signatures part of evidence that no agreement to arbitration was formed).  Fairly read, it appears that the Arbitrator's decision relied on the lack of initials or signatures in the spaces meant for them as evidence of the lack of an agreement; it did not rest only on a rigid legal requirement that such clauses must always be signed.

---

[8] It also appears that, until 2015, the Texas Supreme Court had not rejected the notion that advice of counsel was ethically required for an attorney to procure an arbitration agreement with a client.  That changed well after the ARA was signed.  See Royston, Rayzor, Vickery, & Williams, LLP v. Lopez, 467 S.W.3d 494, 502 (Tex. 2015).

11

Thus, at worst, the 2016 Arbitrator was guilty of a harmless misstatement of applicable law concerning the requirement of signatures, at the same time that his analysis is properly focused on the facts evidencing the formation of an agreement. As such, I certainly do not find anything approaching "manifest disregard of the law," to the extent that such a rubric may persist as a recognized basis for vacating an arbitration award in this Circuit. See McCarthy, 463 F.3d at 93-94 (error of law, even when "painfully clear," does not amount to "manifest disregard"). Put differently, if the "manifest disregard" test remains viable after Hall Street, Barry Johnson's argument that the 2016 Arbitrator committed an error of law does not come close to meeting it.

Apart from the "manifest disregard" test, such a hypothetical appellate analysis is beside the point. What matters is that the determination as to whether or not Patton agreed to arbitrate was referred to a JAMS Arbitrator consistent with the terms of the ARA's arbitration clauses, which called for a final and binding decision regarding any disputes concerning the ARA's interpretation. The Arbitrator made a fact-based decision that Patton had not agreed to the arbitration clauses based on affidavits from both sides, as well as a careful review of the indicia of agreement on the face of the ARA. Whether the Court might disagree does not matter. To paraphrase Oxford Health Plans, 569 U.S. at 573, JLF chose arbitration, and it must now live with that choice. The Arbitrator's interpretation of the ARA's arbitration clauses went against JLF, maybe mistakenly so. JLF does not get to rerun the matter in a court or in a second arbitration. The 2016 arbitration decision should not be vacated based on the Arbitrator's mistake of law.

With a final and binding determination by the 2016 Arbitrator that Patton did not agree to be bound by the arbitration clauses, the remaining question is whether the 2016 arbitration order

12

collaterally estops Barry Johnson, who did not join JLF in prosecuting the 2016 arbitration, from relitigating the identical issue in this Court or in another arbitration.[9] I conclude that it should.

"Under the doctrine of collateral estoppel, 'an issue of ultimate fact that has been actually litigated and determined cannot be re-litigated between the same parties or their privies in future proceedings.'" Foster-Glocester Reg'l Sch. Comm. v. Bd. of Review, 854 A.2d 1008, 1014 (R.I. 2004)[10] (quoting Casco Indemnity Co. v. O'Connor, 755 A.2d 779, 782 (R.I. 2000)); see Manganella v. Evanston Ins. Co., 700 F.3d 585, 591-92 (1st Cir. 2012) (collateral estoppel "prevents a party from relitigating issues that have been previously adjudicated"). As applied in Rhode Island, collateral estoppel requires: "(1) that there be an identity of issues, (2) that the prior proceeding resulted in a final judgment on the merits, and (3) that the party against whom collateral estoppel is asserted be the same as or in privity with a party in the prior proceeding." E.W. Audet & Sons, Inc. v. Fireman's Fund Ins. Co. of Newark, New Jersey, 635 A.2d 1181, 1186 (R.I. 1994) (citing State v. Chase, 588 A.2d 120, 122 (R.I. 1991)).

The first prong is readily satisfied. The 2016 arbitration took up and actually determined the precise same factual issue as the one that Barry Johnson seeks to relitigate here – whether Patton is contractually bound by an agreement to prosecute his legal malpractice claim under the ARA in binding arbitration in Texas. Barry Johnson's argument that the Court should focus on the difference between the substantive claim that JLF framed for the 2016 arbitration and

---

[9] As an aside, I note that Barry Johnson is also precluded from relitigating the issue he raised and lost in the Northern District of Texas – his alternative argument that he has the right to force Patton to arbitration because of the arbitration clause in the employment agreement between himself and JLF. Johnson, slip op. at 2 (docketed in this case at ECF No. 17-1).

[10] Notwithstanding the general rule that the law of the jurisdiction in which a judgment was rendered governs what collateral estoppel effect will be accorded to the judgment, Res judicata and collateral estoppel, Am. L. Prod. Liab. 3d § 46:48 (May 2018), and despite the choice of Texas law in the ARA, Barry Johnson asks the Court to be guided by Rhode Island law and cites Rhode Island and First Circuit cases in developing the collateral estoppel analysis. ECF No. 16 at 6. Patton does not disagree. According, I have followed suit.

13

Patton's substantive malpractice claims in this Court misses the mark. For collateral estoppel purposes, the focus must be on the threshold issue that was actually decided by the 2016 Arbitrator and the threshold issue presented to this Court for relitigation by Barry Johnson's motion to compel arbitration. They are identical. Therefore, the first predicate to the application of collateral estoppel is present.

The second prong looks at whether the prior proceeding resulted in a final judgment on the merits. This analysis relies on the well-settled proposition that final arbitral awards are afforded the same preclusive effects as are prior court judgments. FleetBoston Fin. Corp. v. Alt, 638 F.3d 70, 79 (1st Cir. 2011); see O'Connell v. Fed. Ins. Co., 484 F. Supp. 2d 223, 226 (D. Mass. 2007) ("It is well-settled that issue preclusion may apply to arbitration proceedings."); In re Marx, 171 B.R. 218, 221-22 (Bankr. N.D. Tex. 1994) (arbitration award is "final and binding decision or judgment of the arbitrator in the exercise of his quasi-judicial function to determine the disputed matters referred to him by the parties" and is "conclusive on matters of fact and law"). The lack of judicial confirmation of the award does not affect the analysis – "so long as the criteria for issue and claim preclusion have been met, courts have generally given preclusive effect to both confirmed and unconfirmed awards."[11] O'Connell, 484 F. Supp. 2d at 225 n.2; see Cannavo v. Enter. Messaging Servs., Inc., 982 F. Supp. 54, 58 n. 1 (D. Mass. 1997) ("[e]ven if the arbitration award were not confirmed, it might still have preclusive effect"); In re Drexel Burnham Lambert Grp., Inc., 161 B.R. 902, 907 (S.D.N.Y. 1993) ("[I]n the Second Circuit,

---

[11] Barry Johnson argues to the contrary in reliance on a case where the award was confirmed. However, the Rhode Island Supreme Court did not hold that the judicial confirmation is a mandatory predicate to collateral estoppel. Foster-Glocester Reg'l Sch. Comm. v. Bd. of Review, 854 A.2d at 1014. Moreover, the FAA provides that judicial confirmation is required only when parties have agreed that the arbitral award must be confirmed. 9 U.S.C. § 9. The ARA arbitration clauses provide that an arbitral award "may be entered by any state or federal court." ECF No. 1-1 at 18 ¶ 17 (emphasis added). They do not make confirmation mandatory.

14

courts have accorded preclusive effect to unconfirmed binding arbitrations.").[12] I find that the second prong is satisfied.

In considering the third prong, the guiding principle is whether the party against whom collateral estoppel is asserted – here Barry Johnson –was in privity with the party who participated (JLF) and whether there was a full and fair opportunity to litigate the issue in the first action. O'Connell, 484 F. Supp. 2d at 226; see Commercial Union Ins. Co. v. Pelchat, 727 A.2d 676, 680 (R.I. 1999) ("Parties are in privity when 'there is a commonality of interest between the two entities' and when they 'sufficiently represent' each other's interests."). It is clear that JLF's legal interest in trying to force Patton into the binding 2016 arbitration is identical to its employee's interest in seeking to achieve the same outcome now.[13] Padmanabhan v. Paikos, 280 F. Supp. 3d 248, 252 (D. Mass. 2017) (members of Board are in privity with Board and subject to claim preclusion); Miller Hydro Grp. v. Popovitch, 851 F. Supp. 7, 11 (D. Me. 1994) (employees are in privity with employer when legal interests are identical). Further, Barry Johnson was not employed by JLF at the time the ARA was signed; therefore, JLF's factual presentation to the 2016 Arbitrator regarding the circumstances of contract formation was more than sufficient to represent Barry Johnson's interest. The sufficiency of JLF's

---

[12] Rhode Island courts have looked to the law developed in New York and in the Second Circuit in considering issues related to collateral estoppel. E.g., Foster-Glocester Reg'l Sch. Comm. v. Bd. of Review, 854 A.2d 1008, 1016 (R.I. 2004); Lennon v. Dacomed Corp., No. CIV.A. 99-0387, 2003 WL 1880121, at *6 (R.I. Super. Mar. 18, 2003).

[13] The Supreme Court cautions that, when collateral estoppel is used offensively, trial courts should exercise broad discretion to determine whether such use of this equitable doctrine would be unfair, such as where the stakes in the first litigation were materially different from what is in issue in the second case or where the first litigation is an anomaly in that other cases against the party to be estopped yielded in a different result. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 331 (1979). Here, I find that "none of the circumstances that might justify reluctance to allow the offensive use of collateral estoppel is present." Id. The 2016 arbitration was prosecuted by JLF in the wake of successful Texas state court litigation in which Barry Johnson himself was the plaintiff who sought to force Patton into JAMS arbitration in Texas. Having personally sought that result, Barry Johnson had every incentive to litigate the 2016 arbitration fully and vigorously and faced no procedural barriers to doing so; therefore, the fairness concerns that animated Parklane Hosiery are not in play. Id. at 329.

15

representation of Barry Johnson's interest becomes pellucid when the Court considers that Barry Johnson's right to arbitrate (if one exists) is entirely derivative of the contractual right of his law firm. Finally, it is clear that both JLF and Barry Johnson had a full and fair opportunity to participate in the 2016 arbitration. See Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 328 (1971) (collateral estoppel bars litigant who had a full and fair opportunity to litigate). It was Barry Johnson who sued Patton in the Texas state court suit that led to the 2016 arbitration. Although the record does not reveal why he opted to sit on the sidelines while JLF initiated the arbitration, there is no question that it would not be "tenable to afford [him] another chance at judicial resolution of the same issue." Miller Hydro Grp., 851 F. Supp. at 11 (citing Blonder-Tongue Labs., 402 U.S. at 350).

In sum, I find that Barry Johnson is in privity with JLF for purposes of collateral estoppel. And with the three prongs met, I conclude that Barry Johnson should be collaterally estopped from relitigating the precise issue – whether Patton agreed to the ARA's arbitration clauses – that was actually determined by the 2016 arbitration.

Based on the foregoing, I recommend that Barry Johnson's motion to stay and to compel arbitration be denied.

### III. CONCLUSION

I recommend that defendant Barry Johnson's motion to stay and to compel arbitration, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* (ECF No. 11), be denied.

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days after its service on the objecting party. See Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to

16

appeal the Court's decision.  See United States v. Lugo Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
May 22, 2018